# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs June 17, 2014

## TIMOTHY BARBEE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2012-I-1143      J. Randall Wyatt, Jr., Judge**

---

**No. M2013-02123-CCA-R3-PC - Filed June 18, 2014**

---

Petitioner, Timothy Barbee, pleaded guilty to possession of heroin, a Schedule I controlled substance, with intent to sell, and the trial court sentenced petitioner to the agreed-upon term of eight years at thirty percent release eligibility. In his timely petition for post-conviction relief, petitioner asserts that his guilty plea was not knowingly and voluntarily entered. After an evidentiary hearing, the post-conviction court denied relief. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

ROGER A. PAGE, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Timothy Barbee.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Benjamin J. Ford, III, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts and Procedural History

#### A. Facts from Guilty Plea Submission Hearing

As the basis for petitioner's plea, the State recited the following facts at the November 7, 2012 guilty plea submission hearing:

[H]ad the State gone to trial[,] the State would have shown that on August 23rd of this year at approximately 4:45 the Metropolitan - a detective with Metro Police Department conducted a buy/bust operation at the Sleep Inn Hotel located at 3200 Dickerson Pike here in Davidson County. They received a drug complaint that stated that [petitioner] was a heroin supplier and [that] he was staying at that location.

The caller provided his phone number, [petitioner's] phone number, and they conducted a knock and talk at 213 after the buy/bust operator - operation investigation[,] and that revealed that . . . the heroin was sold out of that room. The brown and white substance that was sold tested positive for the presence of heroin.

Detectives recovered previously copied buy money as well as additional bags of heroin. The bag of heroin located in the room weighed approximately 4 grams.

After reviewing petitioner's rights with him, the trial court asked, "[Y]our lawyer is [trial counsel], have you talked to him[,] and do you feel like you understand what you are getting ready to do here today[,] and are you doing this voluntarily?" Petitioner responded affirmatively. The trial court then asked trial counsel, "[D]o you think this gentleman understands what he is doing and that he is doing it voluntarily?" Trial counsel also responded affirmatively. The trial court addressed petitioner and asked whether he wished to plead guilty or not guilty to possession of heroin for the purpose of resale, and petitioner responded, "Guilty."

## B. Procedural History

Petitioner filed a timely petition for post-conviction relief on March 19, 2013, and, through appointed counsel, an amended petition. The court held an evidentiary hearing on July 25, 2013, and denied relief by written order dated August 21, 2013. This appeal follows.

## C. Facts from Evidentiary Hearing

Petitioner testified that his guilty plea was not knowingly and voluntarily entered because trial counsel allegedly "informed [him] that [he] was copping out for what happened in the car and not what happened at the motel room, because [he] was not present at the motel

room of the alleged incidence . . . ."[1] Petitioner elaborated, "[H]e misled me[.] [H]e told me that I was copping out for something that happened when they come [sic] and picked me up, when they arrested me six days later after this incident . . . [T]hey searched my vehicle and found some crumbs, weed, and cocaine, and charged me with that as well . . . ." He claimed that at the preliminary hearing, trial counsel "made it seem that they [were] going to drop what happened in the motel room and charge me with what they found in my car." Petitioner explained that prior to entering his guilty plea, trial counsel advised him that if he should proceed to trial, the State would try him as a career offender, and he could receive a sentence of thirty years at sixty percent release eligibility. Based on that information, when the State recited the facts underlying the incident at the motel, petitioner agreed, although he "turned around and looked at [trial counsel]" quizzically. Petitioner maintained that had he known the factual allegations underlying the plea prior to entering the courtroom, he would have "demanded a trial."

On cross-examination, petitioner acknowledged that his plea agreement allowed him to plead as a Range I offender to eight years, despite his eleven felony convictions, which would have classified him as a career offender. He agreed that his resulting sentence was favorable to his sentence exposure had he gone to trial. Petitioner admitted that trial counsel told him that it was advisable for him to plead guilty because the State was going to "flip" his co-defendant and bring in an additional witness at trial.

Trial counsel testified that he was retained by petitioner's wife to represent him on the drug charge. He explained the preparation that he undertook prior to petitioner's first court date. He recalled that the State's settlement offer included dismissal of all charges arising from the drugs found in petitioner's vehicle and that the sentence was the minimum of eight years at thirty percent. Trial counsel testified that he "had no idea that [they] would get the opportunity to enter a disposition like this," which he characterized as "favorable." He explained to petitioner that because he was not present at the hotel room, the evidence against him would be circumstantial in nature but that his co-defendant, who had no prior criminal history, would likely resolve any factual discrepancies "to his detriment." Trial counsel further opined that even if they had resolved the charges from the motel room with a "not guilty" verdict, they would still have had to contend with the charges involving his vehicle, about which there were "simply" no discrepancies. That sentencing exposure would have been six years at sixty percent.

---

[1] It should be noted, however, that although the "motel room" transaction was linked to petitioner, he was not present in the motel room when the sale was made. He was arrested approximately six days later on an arrest warrant. Officers towed his vehicle and obtained a search warrant, during execution of which they recovered small amounts of marijuana and cocaine in petitioner's vehicle.

Trial counsel stated that after signing the plea petition but before entering the plea, petitioner changed his mind and left him a voice mail message stating that he did not want to plead guilty. Trial counsel visited with petitioner at the jail where they had the following conversation:

> [Petitioner] apologized for leaving that voicemail and I asked, . . . you don't have to do this and he said, ["][N]o, I understand it[,"] . . . [H]e acknowledged that this was the best plea [offer] made given really what his exposure was, so we went through the plea petition that we normally would.
>
> Because he had told me that . . . [he didn't] want to do this[,] I was . . . extra certain to say or listen, you know, are you sure this is what you want to do[,] and we went through the petition.
>
> I let him know, of course, that . . . one of his concerns was that they would try to try him, that the State would try to try him on the other case, since he was just pleading on one[,] and I said, "[N]o, sir, because you are entering a guilty plea on the motel room case, so to speak, then jeopardy would attach to the other cases[,] and the prosecutor would not try you on those cases,["] and so, again, I went through that.

Petitioner agreed that he wanted to plead guilty. Trial counsel denied that he used petitioner's sentencing range as a coercive tactic in advising him to plead guilty.

Trial counsel acknowledged that when the trial court asked petitioner how he pleaded to the offense, petitioner gave a "rather lengthy pause." Petitioner did not say anything, but he gave a "dramatic" ten-second pause before saying, "Guilty." Aside from the voice mail petitioner left, petitioner gave trial counsel no indication that he did not want to plead guilty.

## II. Analysis

Petitioner presents one issue for our review: whether his guilty plea was knowingly and voluntarily entered.[2]

---

[2] In his petition for relief and at the post-conviction hearing, petitioner also raised several claims of ineffective assistance of counsel. We note that on appeal, he has abandoned those claims and has pursued only the free-standing constitutional claim of involuntarily pleading guilty. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) ("[W]hile the Petitioner raised additional issues in his petition for post-conviction relief, he has abandoned those issues on appeal"). Accordingly, those issues have not been addressed on appeal.

-4-

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)).

In this case, petitioner claims that his guilty plea was not voluntarily entered. A petitioner's "'claim . . . that a plea was not voluntarily and knowingly entered[] implicates his due process rights and therefore falls squarely within the ambit of issues appropriately addressed in a post-conviction petition.'" *Rigger v. State*, 341 S.W.3d 299, 308 (Tenn. Crim. App. 2010) (quoting *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000)). It is axiomatic that a guilty plea must be entered knowingly, voluntarily, and intelligently. *Lane*, 316 S.W.3d at 562; *see North Carolina v. Alford*, 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969). If a plea is not knowingly, voluntarily, and intelligently entered, the guilty plea is void because appellant has been denied due process. *Lane*, 316 S.W.3d at 562 (citing *Boykin*, 395 U.S. at 243 n.5). To make such a determination, the court must examine "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* Courts should consider the following factors when ascertaining the validity of a guilty plea:

> (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) the competency of counsel and the defendant's opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial.

*Id.* (quoting *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006)). "[A] plea is not voluntary if it results from '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Id.* at 563 (quoting *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)). Thus, the transcript of the plea colloquy must affirmatively show that a defendant's decision to plead guilty was both voluntary and knowledgeable. *Id.* The trial court must ensure that the defendant entered a knowing and intelligent plea by thoroughly "'canvass[ing] the matter with the accused to make sure that he has a full understanding of what the plea connotes and of its consequences.'" *Id*. (quoting *Blankenship*, 858 S.W.2d at 904).

To ensure that defendants' guilty pleas are voluntarily, knowingly, and intelligently entered, Rule 11 of the Tennessee Rules of Criminal Procedure sets forth, in pertinent part, the requirements for guilty pleas:

> Before accepting a guilty or nolo contendere plea, the court shall address the defendant personally in open court and inform the defendant of, and determine that he or she understands, the following:
>
> (A)  The nature of the charge to which the plea is offered;
>
> (B)  the maximum possible penalty and any mandatory minimum penalty;
>
> (C)  if the defendant is not represented by an attorney, the right to be represented by counsel--and if necessary have the court appoint counsel--at trial and every other stage of the proceeding;
>
> (D)  the right to plead not guilty or, having already so pleaded, to persist in that plea;
>
> (E)  the right to a jury trial;
>
> (F)  the right to confront and cross-examine adverse witnesses;
>
> (G)  the right to be protected from compelled self incrimination;
>
> (H)  if the defendant pleads guilty or nolo contendere, the defendant waives the right to a trial and there will not be a further trial of any kind except as to sentence;

(I)      if the defendant pleads guilty or nolo contendere, the court may ask the defendant questions about the offense to which he or she has pleaded. If the defendant answers these questions under oath, on the record, and in the presence of counsel, the answers may later be used against the defendant in a prosecution for perjury or aggravated perjury; and

(J)      if the defendant pleads guilty or nolo contendere, it may have an effect upon the defendant's immigration or naturalization status, and, if the defendant is represented by counsel, the court shall determine that the defendant has been advised by counsel of the immigration consequences of a plea.

Tenn. R. Crim. P. 11(b)(1).

Rule 11 also requires that the trial court ascertain that the plea is "voluntary and is not the result of force, threats, or promises," other than those contained in the plea agreement. Tenn. R. Crim. P. 11(b)(2). In addition, Rule 11 requires the trial court to inquire "whether the defendant's willingness to plead guilty results from prior discussions between the district attorney general and the defendant or the defendant's attorney." *Id.* Finally, the trial court must confirm that there is a factual basis for the plea. Tenn. R. Crim. P. 11(b)(3).

In denying relief on this claim, the post-conviction court concluded:

> The Court initially notes that all of the procedural requirements in terms of the plea colloquy and the keeping of a verbatim record were met in this case. . . . The Court finds that [trial counsel] did thoroughly discuss this case with Petitioner. The Court also finds that [trial counsel] did not threaten the Petitioner into doing anything. The [C]ourt finds that the Petitioner signed the plea petition, which set forth the nature and consequences of the plea as well as Petitioner's constitutional rights. Moreover, having reviewed the transcript of the plea colloquy, the Court finds that the Petitioner, under oath, stated that he was entering the plea voluntarily and that he understood what he was doing. The Court explained the nature of the plea and the sentence to Petitioner, and the Court finds that he pled guilty with an understanding of what he was doing, and that he did so of his own volition. Therefore, the Court finds that petitioner is not entitled to relief on this issue.

The evidence does not preponderate against the post-conviction court's findings. We also note that petitioner, having garnered eleven felony convictions, was familiar with criminal proceedings. *Lane*, 316 S.W.3d at 562. He retained competent counsel and had an opportunity to confer with him on several occasions, and trial counsel advised him about the charges against him and potential sentence exposure. *Id.* In addition, petitioner's guilty plea alleviated the possibility of his being found guilty and sentenced as a career offender to thirty years at sixty percent release eligibility. *Id.*

Moreover, petitioner's testimony at the post-conviction hearing was in direct conflict with his testimony at the guilty plea hearing. "A petitioner's testimony at a guilty plea hearing 'constitute[s] a formidable barrier' in any subsequent collateral proceeding because '[s]olemn declarations in open court carry a strong presumption of verity.'" *Bruce S. Rishton v. State*, No. E2010-02050-CCA-R3-PC, 2012 WL 1825704, at *17 (Tenn. Crim. App. May 21, 2012) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). In sum,

> [t]he evidence does not preponderate against the findings of the post-conviction court. It appears the petitioner is suffering from a classic case of 'Buyer's Remorse,' in that he is no longer satisfied with the plea for which he bargained. A plea, once knowingly and voluntarily entered, is not subject to obliteration under such circumstances.

*Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002).

## CONCLUSION

Based on our review of the record, the parties' briefs, and the applicable legal authority, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE